UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-23778-CIV-MOORE/D'ANGELO

FALISHA BELL,

     Plaintiff,

vs.

MIAMI-DADE COUNTY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION
## GRANTING DEFENDANT'S MOTION TO DISMISS

     **THIS CAUSE** is before the Court on Defendant Miami-Dade County's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice, in the Alternative, Motion for More Definite Statement filed on July 21, 2025 (DE 80) and Plaintiff Falisha Bell's Motion for Summary Judgment filed on July 22, 2025 (DE 81).[1]  Plaintiff filed her response in opposition to the Motion to Dismiss on September 8, 2025 (DE 88).  Defendant filed its reply in support of the Motion to Dismiss on September 15, 2025 (DE 90).  Defendant filed its response to Plaintiff's Motion for Summary Judgment on August 5, 2025 (DE 82).  Plaintiff filed her reply in support of the Motion for Summary Judgment on August 6, 2025 (DE 83).  Having considered the Parties' arguments, the relevant legal authorities, and the pertinent portions of the record, and being otherwise fully advised in the premises, for the reasons stated below, it is respectfully recommended that Defendants' Motion to Dismiss be **GRANTED** and Plaintiff's Motion for Summary Judgment be **DENIED AS MOOT** as further set forth below.

---

[1] This case was referred to the undersigned Magistrate Judge for all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters (DE 13).

## I.      **FACTUAL BACKGROUND**

According to the Second Amended Complaint ("SAC"), on August 15, 2022, Plaintiff signed an offer letter from the Community Action and Human Services Department ("CAHS") of Miami-Dade County agreeing to a part-time position as a Social Worker Aide (DE 74 at 11).[2] Plaintiff alleges that she was employed by Miami-Dade County for several years before August 2022 (*id*. ¶ 7).   Plaintiff claims that her supervisor would "speak to her in the presence of her Hispanic coworkers in English, but when she spoke to [Plaintiff's Hispanic coworkers] in front of the plaintiff, she spoke in Spanish, where the plaintiff had no knowledge of what was being said" (*id*. ¶ 15).[3]   Plaintiff alleges that her supervisor would allow her Hispanic coworkers to arrive to work late, leave early, request transfers, date each other, and falsify their timesheets (*id.*).   Plaintiff alleges that when she requested a transfer after "witnessing all the wrongdoing under Miami-Dade County," her supervisor informed the Hispanic staff about Plaintiff's transfer request, which resulted in a "hostile working environment" (*id.*).   Plaintiff's supervisor, Danithza Zevallos, and Danithza Zevallos' supervisor, Lorena Toledo, denied Plaintiff's transfer request, stating that they could not accommodate the request due to operational need (*id*. ¶ 15, at 13).

Plaintiff was terminated from her part-time employment on September 8, 2023 due to "unsatisfactory work performance" (*id*. at 14).   Plaintiff claims that she received "bogus write-ups" from her supervisor which were "found to be untrue and rescinded" (*id*. ¶ 15).   Plaintiff alleges that shortly thereafter, she was terminated based on retaliation "from the bogus write-ups

---

[2] In evaluating a Motion to Dismiss, the Court may consider documents attached to the Complaint. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997) ("[A]nalysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto.").

[3] Plaintiff uses the words "Spanish" and "Hispanic" interchangeably to seemingly describe a group of people who speak Spanish (DE 74 ¶ 15).

being rescinded" and after she reported "misconduct, favoritism, inappropriate relationships, stealing time, [and] not coming to work and getting paid within the department" (*id*. ¶¶ 9, 15). Plaintiff claims that other individuals including Prsicilla Sairras-Fertil, Rose Taylor, Susan Cottle, and Sonji Watson Toussaint were also subject to abrupt and questionable terminations, showing a pattern of discrimination against minorities (*id*. ¶ 10). Plaintiff alleges that the department is wrongfully using their authority and terminating and retaliating against employees before they complete their one-year probationary period (*id*. ¶ 8). After she was terminated, Plaintiff was transferred to the Water and Sewer department (*id*. ¶ 15). Plaintiff alleges that Assistant Director, Ivon Mesa was removed from her prior department, Lorena Toledo resigned, and Danithza Zevallos was transferred (*id*.). According to Plaintiff, "[t]his was Miami-Dade County's way of dispersing the Hispanic clique within the MDC work area" (*id*.). Plaintiff states that she was never brought back to her prior department and instead she was called a whistleblower (*id*.).

Plaintiff states that she filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and after several months, she was issued a Notice of Right to Sue letter (*id* ¶¶ 12-14). Plaintiff attached a Notice of Right to Sue letter issued on March 29, 2023 as an exhibit to the SAC (*id*. at 15). On the back of the Notice of Right to Sue letter, the case number 510-2021-067572 is displayed, and it was signed by Plaintiff on October 4, 2021 (*id*. at 16). The description box states, "Age /55 and Retaliated against in violation of the Age discrimination in Employment Act of 1967" (*id*.).

## II.    **PROCEDURAL POSTURE**

Plaintiff filed the initial complaint against CAHS on October 1, 2024, alleging a single claim under Title VII of the Civil Rights Act, in violation of Title 42, United States Code, Section 2000e, *et seq*. (DE 1). On November 18, 2024, CAHS filed its initial Motion to Dismiss, arguing

that it did not have legal capacity to be sued, because it was a department of Miami-Dade County, and requesting that the Court quash service of process, because Plaintiff served an individual who was not authorized to accept service (DE 18). Plaintiff filed a response in opposition on November 26, 2024 (DE 25). On December 31, 2024, upon a *sua sponte* review of the record, the Court found that the Parties failed to file a joint status report that complied with the Court's Pretrial Order (DE 28). The Court dismissed the action without prejudice, instructed the Clerk of Court to close the case, denied all pending motions as moot, and ordered that the Parties may move to reopen the case upon the filing of a joint scheduling report (*id*.). After each party filed its proposed scheduling report, on February 21, 2025, the Court vacated the prior Order and instructed the Clerk of Court to reopen the case (DE 41). On February 27, 2025, CAHS filed another Motion to Dismiss and reiterated its prior arguments (DE 44). The next day, Plaintiff filed her Motion to Strike Defendant's Motion to Dismiss (DE 45), which the Court construed as Plaintiff's opposition to the Motion to Dismiss, stating that the Motion misapplies legal principles and lacks merit.

On May 30, 2025 the undersigned issued a Report and Recommendation ("R&R") recommending that Defendant's Motion to Dismiss be granted and that Plaintiff be given leave to amend the Complaint (DE 62). The May 30, 2025 R&R detailed the deficiencies in the Complaint, including that it failed to separate the causes of actions and factual allegations into numbered paragraphs, identify a basis for discrimination, and allege specific facts to establish each element of the cause of action (DE 62 at 6-7). The R&R also recommended that Plaintiff be granted leave to file an amended complaint that comports with the R&R, the Federal Rules of Civil Procedure, and the Local Rules for the Southern District of Florida (*id*. at 6, 8). Plaintiff objected to the R&R on June 25, 2025 and requested that the Court reconsider the Motion to Dismiss (DE 71). The R&R was adopted by the Court's June 16, 2025 Order (DE 68 at 4).

Plaintiff filed an Amended Complaint on June 30, 2025 (DE 72).  On July 2, 2025, the Court held that the Amended Complaint did not sufficiently address the deficiencies identified in its June 16, 2025 Order (DE 73).  The Court pointed out that in the Amended Complaint, CAHS was still listed as a co-defendant, even though the Court explained CAHS lacks the capacity to be sued, the causes of actions and factual allegations were not in separate numbered paragraphs, and the Amended Complaint was silent as to the alleged racial or other discrimination (*id.*).  The Court then reminded Plaintiff that it had "previously cautioned Plaintiff that her Complaint was deficient, because it did not identify the 'basis of [her] discrimination or any other facts that would allow the Court to conclude that Title VII discrimination or retaliation claims are adequately alleged'" (*id.*).  The Court ordered that the case be closed until Plaintiff filed an amended complaint that remedied the specific defects identified by the Court (*id.*).  Plaintiff filed her SAC on July 7, 2025, (DE 74), and the Court reopened the case (DE 75).

## III.    LEGAL STANDARD

### A.    *Pro Se* Pleadings

 "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  "[A]lthough [courts] are to give liberal construction to the pleadings of *pro se* litigants, '[they must] conform to procedural rules.'" *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (quoting *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002)).  "[I]n liberally construing a litigant's arguments, [courts] will not act as *de facto* counsel." *Freeman v. Sec'y, Dep't of Corr.*, 679 F. App'x 982, 982 (11th Cir. 2017) (citation omitted).  "[A] pro se . . . litigant . . . is subject to the relevant law and rules of court . . . ." *McNair v. Johnson*, 143 F.4th 1301, 1307 (11th Cir. 2025) (citation omitted)).

### B.      Failure to State a Claim Upon Which Relief Can be Granted

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citation omitted).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citation omitted).  On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).  "When evaluating a motion to dismiss, a court may consider outside documents without converting the motion into a motion for summary judgment if (1) the document is central to the plaintiff's claim, and (2) its authenticity is not challenged." *Swauger v. Dep't of Def. - Def. Intel. Agency*, 852 F. App'x 393, 395 (11th Cir. 2021) (citing *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005)).

## IV.    DISCUSSION

In its Motion to Dismiss, Defendant argues that Plaintiff's SAC should be dismissed for several reasons (DE 80 at 2).  First, Defendant argues that Plaintiff has had three opportunities to file a complaint that complies with the Local Rules for the Southern District of Florida and the Federal Rules of Civil Procedure and has yet to meet her burden (*id*. at 1).  Defendant contends that Plaintiff has failed to allege facts to support the elements of her Title VII claims (*id*.  at 2-3).

6

Defendant further claims that Plaintiff's failure to properly plead her claims has impacted Defendant's ability to defend itself and engage in meaningful discovery (*id*. at 3).  Defendant argues that (1) Plaintiff has failed to administratively exhaust her claims; (2) Plaintiff has failed to state a claim for discrimination, retaliation, and hostile work environment; and (3) that the SAC is still an impermissible shotgun pleading (*see generally* DE 80).

In her response, Plaintiff claims that she has been wronged by Defendant (DE 88 at 2). Plaintiff states that she has "shown [the Court] a pattern of dishonesty with the attorney and her colleagues" (*id*.).  Plaintiff further states that "[a]ll [she is] asking, . . . is that [the Court] please look at . . . two individuals that were part of [the] EEOC and clearly argue that they weren't the right entities to be sued" (*id*.).  Plaintiff states that what is happening in this case is "abuse of power" (*id*.).  Plaintiff claims that Defendant has attempted to mislead Plaintiff and the Court several times, continued to raise issues that have already been addressed, and filed the Motion to Dismiss in an attempt to delay or derail proceedings (*id*. at 3-4).

### A.      Failure to Administratively Exhaust Claims

Defendant first argues that the SAC fails to provide a timeline for Plaintiff's EEOC Charge (DE 80 at 3).  Defendant explains that the exhibits to the SAC show that Plaintiff was hired on August 15, 2022 and terminated on September 8, 2023 (*id*. 3-4).  Defendant highlights that the EEOC Charge has an electronic signature date of October 4, 2021, a year before Plaintiff's employment began (*id*. at 4).  Defendant also argues that the Notice of Right to Sue letter, which required Plaintiff to bring the lawsuit within ninety days, is dated March 29, 2023, and the instant action was filed on October 1, 2024—552 days after Plaintiff's receipt of her Notice of Right to Sue letter (*id*.).  Defendant argues that Plaintiff's failure to exhaust administrative remedies is fatal to her claims and that the SAC must be dismissed with prejudice (*id*.).

Plaintiff does not specifically address Defendant's argument in her response. Instead, Plaintiff states that after being fired by Defendant, she filed a complaint with the EEOC and was issued a Notice of Right to Sue letter after months of investigation (DE 88 at 4-5). Plaintiff then attaches to her opposition a different Determination and Notice of Rights letter dated July 9, 2024 (*compare* DE 88 at 14 *with* DE 74 at 15). In its Reply, Defendant argues that Plaintiff attached eleven pages of documents to her response that are not referenced in or attached to the SAC (DE 90 at 1). Defendant emphasizes that Plaintiff cannot amend her complaint through her response to a motion to dismiss (*id*.). Defendant requests that the Court disregard the additional documents, which have not been authenticated and are not referenced or incorporated into the SAC (*id*. at 2).

"Prior to filing a Title VII action . . . a plaintiff first must file a charge of discrimination with the EEOC." *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (citation omitted). "[P]laintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003) (quoting *Mulhall v. Advance Security, Inc.,* 19 F.3d 586, 589 n. 8 (11th Cir.1994)). A charge should contain "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices . . . ." 29 C.F.R. § 1601.12 (2025). "Title VII of the Civil Rights Act of 1964 requires that suit be brought within 90 days after receipt of notice of right to sue." *Bell v. Eagle Motor Lines*, 693 F.2d 1086, 1086 (11th Cir. 1982).

The Notice of Right to Sue letter that Plaintiff attaches to the SAC is dated October 4, 2021—almost a year before Plaintiff started working at the job where the alleged discrimination took place (DE 74 at 11). Plaintiff offers no explanation for this date inconsistency. Although

8

Plaintiff asserts that she was employed by Defendant "for several years prior to August of 2022," the August 2022 employment letter and September 2023 termination letter suggest the alleged discrimination took place during that time period (*id*. ¶ 7). Plaintiff also attaches several documents from 2023 that correspond to various other allegations, though none of the facts in the SAC are tethered to any dates. Furthermore, the Notice of Right to Sue letter states, "Age/55 and Retaliated against in violation of the Age Discrimination in Employment Act of 1967" (*id*. at 16).[4] Notably the SAC makes no claim or reference to age discrimination (*see generally id*.). Lastly, Plaintiff's Notice of Right to Sue letter was issued on March 29, 2023, but Plaintiff did not file the instant lawsuit until October 1, 2024, well beyond the required ninety-day period.

In response to Defendant's claims that Plaintiff's lawsuit was untimely, Plaintiff attaches another Notice of Right to Sue letter dated July 9, 2024, with no explanation or description of the corresponding EEOC charge and investigation (DE 88 at 5).[5] Plaintiff offers no further clarity in her response, which simply states in a conclusory fashion that the Court should review the attached exhibits (DE 88 at 5). The Court simply has no way to determine at this stage whether the July 9, 2024 Notice of Right to Sue letter pertains to the instant Defendant and the allegations in the SAC based on the evidence presented. *See Akkasha v. Bloomingdale's, Inc.*, No. 17-CIV-22376, 2019

---

[4] It appears that only the signature page of the Notice of Right to Sue letter is attached to the SAC without the remaining pages describing the EEOC investigation (DE 74 at 16).

[5] Generally, in analyzing a motion to dismiss, the Court cannot rely on attachments to Plaintiff's response. *Austin v. Mod. Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008) (citation omitted) ("A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss."). However, in a motion to dismiss for administrative exhaustion, "the Court can consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merit." *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008); *see also Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 425 (11th Cir. 2010) ("In sum, in ruling on . . . [a] motion to dismiss based solely on exhaustion of administrative remedies and not on the merits of [plaintiff's] claims, the district court did not err in considering evidence outside the pleadings or in making fact findings as to exhaustion.").

WL 7480652, at *4 (S.D. Fla. Dec. 18, 2019) ("Exhaustion of administrative remedies is an affirmative defense and not a jurisdictional prerequisite. . . . However, it is Plaintiff's burden to prove that she complied with conditions precedent and filed a valid timely charge.").  Even assuming Plaintiff sufficiently alleged that she exhausted administrative remedies through the incorporation of the July 9, 2024 Notice of Right to Sue letter, there are a multitude of other deficiencies in SAC.

### B.      Plaintiff Fails to State a Claim Under Title VII

Next, Defendant argues that Plaintiff's allegations do not satisfy the pleading standards for discrimination, retaliation, or hostile work environment claims (DE 80 at 5).

### 1.      Plaintiff's Discrimination Claim

Defendant argues that while the SAC attempts to assert a claim for race discrimination, no allegations identify Plaintiff's race (*id*.).  Defendant highlights that the SAC does not allege that Plaintiff was qualified for her position, which is especially important given she was fired less than a year later for unsatisfactory performance (*id*.).  Defendant contends that the SAC also fails to connect any of the alleged adverse acts to Plaintiff's race (*id*. at 5-6).

Plaintiff does not directly address Defendant's arguments in her response (DE 88 at 4). Instead, Plaintiff reiterates the same facts that are already stated in the SAC (*id*.).  Plaintiff restates that her supervisor would speak to her in English but would speak to her Hispanic coworkers in Spanish and that her supervisor would allow her Hispanic co-workers to come to work late, leave early, request transfers, date each other, and falsify their timesheets (*id*.).  Plaintiff asserts that when she asked to transfer departments, she was told her request could not be accommodated (*id*.).

Even if the Court takes all allegations in the SAC as true, as it must, and construes the SAC liberally in light of Plaintiff's *pro se* status, Plaintiff fails to establish a prima facie case for race

discrimination.  "Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e–2(a)(1)).  "In order to prove discriminatory treatment in violation of Title VII, a plaintiff must first establish a prima facie case of discrimination." *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073 (11th Cir.1995).

> To establish a prima facie case of disparate treatment under *McDonnell Douglas*, a plaintiff must show that she was: (1) a member of a protected class; (2) qualified for the position or entitled to the benefit sought; (3) subjected to adverse employment action; and (4) that the employer treated similarly situated employees outside the class more favorably.

*Moreland v. Miami-Dade Cnty.*, 255 F. Supp. 2d 1304, 1312 (S.D. Fla. 2002) (citation omitted). A plaintiff fails to allege she is qualified for a position if she states that she is qualified in a conclusory fashion without alleging specific qualifications necessary for the particular job. *Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 811 (11th Cir. 2015).  Courts will grant a motion to dismiss where "[n]o factual allegation is provided as to whether Plaintiff and similarly situated non-protected persons received dissimilar treatment, nor . . . sufficient facts to support the inference of a nexus, or causal connection, between race and the disparate treatment." *Showers v. City of Bartow*, 978 F. Supp. 1464, 1468 (M.D. Fla. 1997).

First, Plaintiff does not allege that she is a member of a protected class or state her race, to the extent that race is the basis of her discrimination claim.  *See Lopez v. Hollybrook Golf & Tennis Club*, No. 11-CIV-60597, 2012 WL 760784, at *2 (S.D. Fla. Mar. 7, 2012) ("Plaintiff fails to articulate 'which protected class he is a part of' . . . .").  Plaintiff details that her supervisor would speak to her Hispanic colleagues in Spanish but speak to Plaintiff in English and allow Plaintiff's

Hispanic colleagues to come to work late, leave early, request transfers, date each other, and falsify their times records (DE 74 ¶ 15).  These allegations are insufficient, even if taken as true, to establish the first element of a Title VII claim based on race discrimination.  *See Pielech v. Torah Acad. for Girls Sha'arei Bina Inc.*, No. 08-CIV-21615, 2009 WL 10668497, at *2 (S.D. Fla. Feb. 2, 2009) ("[B]y stating that he is 'not Jewish,' [the plaintiff claims he] has sufficiently pled a claim for race and religious discrimination.  However, in order to state a claim for religious or racial discrimination, [the plaintiff] must first specify what protected class . . . he is a member of.").

Next, Plaintiff fails to show that she was qualified for the position she held.  Plaintiff does not include any allegations as to her qualifications other than attaching a Core Competency Advocacy Training Certificate issued by Florida Coalition Against Domestive Violence on April 10, 2006, sixteen years before the signed offer letter dated August 15, 2022 (DE 74 at 12).  This alone is not enough to plead that Plaintiff was qualified for her job.  *See Pouyeh*, 613 F. App'x at 811 (holding that the plaintiff failed to provide sufficient allegations about his qualifications when he alleged that he graduated from medical school abroad and had experience, without alleging that he had fulfilled the specific qualifications necessary for the particular job).  Here, Plaintiff does not describe what qualifications were required for her job, what her duties and responsibilities were, or what specific qualifications she possessed.  There is no information at all about the employer's qualifications for the job and whether Plaintiff satisfied those qualifications through her experience or educational background.  *Trask v. Sec'y, Dep't of Veterans Affs.*, 822 F.3d 1179, 1191 (11th Cir. 2016), *abrogated on other grounds by Babb v. Wilkie*, 589 U.S. 399 (2020) ("[T]o demonstrate that she was qualified for the position at the prima facie stage, a plaintiff must show that she satisfied an employer's objective qualifications.").

Lastly, Plaintiff fails to connect any of the alleged adverse acts to her membership of a protected class. For example, Plaintiff states that her Hispanic co-workers were granted transfer requests, and Plaintiff's transfer request was denied (DE 74 ¶ 15). Plaintiff further states that her Hispanic co-workers were allowed to arrive to work late and leave early, date each other, and falsify their time records (DE 74 ¶ 15). But, Plaintiff does not offer any allegations that demonstrate she suffered adverse employment action based on her membership in a protected class, particularly where there are no allegations about the protected class to which Plaintiff belongs. *See Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1274 (11th Cir. 2004) (holding claims were insufficient to survive a motion to dismiss when they were "wholly conclusory, generalized, and non-specific claims of disparate treatment"); *Nurse v. City of Alpharetta*, 775 F. App'x 603, 606 (11th Cir. 2019) (holding the plaintiff's pleadings were wholly speculative and conclusory when he alleged that African-American police officers were subjected to more severe disciplinary actions than white officers, denied promotions compared to white officers, and that he had been subjected to discriminatory treatment based on his race). Moreover, Plaintiff lists the names of other co-workers who were "also subject to abrupt or questionable terminations, suggesting . . . discrimination . . . against minorities . . . ." (DE 74 ¶ 10). Yet, Plaintiff provides no factual information regarding what protected class these individuals belong to and whether it was the same protected class as Plaintiff. There are simply no allegations in the SAC or its attachments that establish a connection between Plaintiff's membership in a protected class and the alleged adverse acts.

### 2. *Plaintiff's Retaliation Claim*

Defendant argues that Plaintiff also failed to state a claim for retaliation (DE 80 at 6). Defendant asserts that although Plaintiff claims that she was terminated after reporting misconduct,

favoritism, inappropriate relationships, stealing time, and not coming into work and getting paid within her department, Plaintiff's claims are ambiguous and do not specify when she made the alleged complaints (*id*. at 7). Defendant also contends that Plaintiff's reporting of such complaints is not made unlawful by Title VII (*id*.). According to Defendant, no allegations establish causal connection between Plaintiff's alleged complaints and her termination (*id*. at 8). Defendant highlights that Plaintiff does not even allege that the person who terminated her had any knowledge of her alleged complaints (*id*.). Plaintiff does not directly respond to Defendant's arguments but instead, reiterates that she was terminated based on retaliation from "bogus writeups being rescinded." (DE 88 at 4).

"Title VII's anti-retaliation provision prohibits retaliation when an employee 'oppos[es] any practice made an unlawful employment practice by [Title VII]' . . . .'" *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). "To establish a prima facie case of retaliation, a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). "A plaintiff satisfies [the] element [of causation] if she provides sufficient evidence of [the decision maker's] knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse action." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (citation omitted and modified).

At the outset, it is unclear from the allegations in the SAC whether Plaintiff's reporting of misconduct constituted "protected activity." Plaintiff first claims that she was terminated after reporting "misconduct, favoritism, inappropriate relationships, stealing time, [and] not coming to work and getting paid" from within her department but later states that she was terminated because

of "bogus write-ups [that] were rescinded" (DE 74 ¶¶ 9, 15).[6]  From these vague statements alone, it is unclear if the information Plaintiff reported was "protected activity."  *See Rose v. Wal-Mart Stores E., Inc.*, 631 F. App'x 796, 798 (11th Cir. 2015) ("Title VII and § 1981 prohibit employers from taking adverse actions against employees in retaliation for their opposition to statutorily prohibited racial discrimination.") (citation omitted).  Whether Plaintiff reported misconduct, favoritism, workplace relationships, stealing time, or bogus write-ups by her supervisors, those allegations, without more, do not establish that Plaintiff reported unlawful racial discrimination by her employer, constituting protected activity under Title VII.  *See Brown v. City of Opelika*, 211 F. App'x 862, 863 (11th Cir. 2006) ("A plaintiff can show participation in a protected activity by demonstrating that she had a subjective, good-faith belief that her employer was engaged in *unlawful* employment practices and that her belief was objectively reasonable in light of the facts and record presented.") (citation omitted) (emphasis added).

Plaintiff's allegations also fail to demonstrate the causation element of a retaliation claim, as Plaintiff does not allege a causal link between the protected expression and the adverse employment action.  Indeed, Plaintiff does not put forth any facts from which the Court could conclude that the "decision maker," Director Sonia Grice, knew that Plaintiff reported racial

---

[6] "Write-ups" that were rescinded, without more, may not be considered adverse employment actions that form the basis of a retaliation claim.  *See Medearis v. CVS Pharmacy, Inc.*, 646 F. App'x 891, 898 (11th Cir. 2016) ("[Plaintiff] received several written reprimands, but . . . these 'write-ups' were not even made part of his personnel file.  [Plaintiff] offered no evidence demonstrating that he experienced a tangible consequence such as a loss of pay or benefits, further discipline, or denial of a promotion based on these reprimands."); *see also Rorie v. Sch. Bd. of Palm Beach Cnty., Fla.*, No. 21-CIV-81865, 2024 WL 51008, at *10 (S.D. Fla. Jan. 4, 2024) ("Written reprimands are not considered adverse employment actions unless the reprimands resulted in a 'significant change in employment status, such as hiring, firing, failing to promote, [or] reassignment with significantly different responsibilities.'").

discrimination by others and terminated her because of it.[7]  *See Castillo v. Roche Lab'ys, Inc.*, 467 F. App'x 859, 862 (11th Cir. 2012) (holding to satisfy the element of causation plaintiff must "show[] that the decision-maker knew of the protected activity, and that a close temporal proximity existed between this awareness and the adverse employment action").  "When evaluating a charge of employment discrimination, . . . [the Court] must focus on the actual knowledge and actions of the decision-maker."  *Brown*, 211 F. App'x at 864.  Plaintiff does not plead any facts related to whether she reported racial discrimination and to whom, and whether Director Grice knew about any such reports.  Nor does Plaintiff offer any details or timeline as to how or when she reported the alleged misconduct.  Plaintiff only mentions that she met with Director Grice *after* her termination (DE 74 ¶ 15).  These disjointed and vague accusations do not provide sufficient information to determine whether there is any causal link, or even some temporal proximity, between the protected activity and the adverse employment action to state a retaliation claim.

### 3. *Plaintiff's Hostile Work Environment Claim*

Defendant argues that Plaintiff also fails to state claim for hostile work environment (DE 80 at 8).  Defendant contends that Plaintiff's allegations that her supervisor spoke to her co-workers in Spanish and allowed her Hispanic coworkers to transfer, date each other, and falsify time sheets is not enough to show severe and pervasive treatment that is considered objectively abusive or hostile (*id*. at 8-9).  Defendant claims that Plaintiff's allegations at most discuss isolated events that evidence Plaintiff's incompatibility with her supervisor (*id*. at 9).  Defendant argues that Plaintiff's allegations are too conclusory and fail to allege that adverse incidents occurred with the

---

[7] Director Grice signed Plaintiff's termination letter (DE 74 at 14).  Plaintiff alleges she "met with Director, Ms. Grice," and her union representative after her termination and was later advised an investigation would be conducted (DE 74 ¶ 15).

frequency necessary to state a claim for hostile work environment (*id.*).  Plaintiff does not directly respond to Defendant's arguments in her response, beyond restating the allegations in the SAC.

"A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002) (citing *Harris*, 510 U.S. at 21).

> [A] plaintiff wishing to establish a hostile work environment claim show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Id*.  "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations omitted).

Plaintiff alleges that she requested a transfer after "witnessing all the wrongdoing under Miami-Dade County and speaking to the supervisor" (DE 74 ¶ 15).  Plaintiff conclusively asserts that the supervisor told "her Hispanic staff" about Plaintiff requesting a transfer after "witnessing all the wrongdoing" which made Plaintiff's workplace "a hostile working environment" (*id.*).  As previously discussed, Plaintiff fails to allege that she belongs to a protected group, describe the unwelcome harassment, or assert that the harassment was based on a protected characteristic. Furthermore, Plaintiff provides no details about the circumstances of her work environment after the supervisor allegedly told the other employees about Plaintiff's reports and whether it was so

severe or pervasive as to alter the conditions of employment.[8]  Instead, Plaintiff simply states in a conclusory fashion that she was subject to a hostile working environment.  These allegations are wholly inadequate to raise a claim for a hostile work environment.  *See Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, No. 19-CIV-25298, 2020 WL 1933169, at *4 (S.D. Fla. Apr. 14, 2020) (holding plaintiff's allegations that he was subjected to discrimination by creating a hostile work environment were entirely conclusory).

In sum, even when accepting all facts in the SAC as true, and viewing them in the light most favorable to Plaintiff, as the Court must at this stage of the proceedings, the allegations are woefully insufficient to state a claim under Title VII.  Indeed, the facts in the SAC are not adequate to put Defendant on notice of the specific claims against it and the grounds upon which those claims are brought (DE 80 at 3).  While the SAC is liberally construed by the Court, Plaintiff must still meet the necessary pleading standards to maintain this action, and the Court is not permitted to set aside rules that govern this action for the benefit of a *pro se* Plaintiff.  *Moreno v. Serco Inc.*, 734 F. App'x 656, 658 (11th Cir. 2018) ("[The plaintiff's] assertion that his pro se status should have excused his failure to follow the applicable rules fail.").

---

[8] It does not appear that Plaintiff claims the "hostile work environment" was created by her supervisor speaking to her Hispanic co-workers in Spanish and allowing her Hispanic co-workers privileges and leniencies, because the SAC alleges that the hostile work environment began *after* Plaintiff reported these events (*id.*).  However, even if Plaintiff claims these events constitute a hostile work environment, the allegations are insufficient.  *See Webb v. R & B Holding Co.*, 992 F. Supp. 1382, 1389 (S.D. Fla. 1998) ("[A]llegations that certain employees spoke Spanish in [Plaintiff's] presence, even if assumed to be true, does not rise to the level of a hostile work environment claim.  There is no evidence that the speaking of Spanish constituted harassment 'sufficiently severe or pervasive as to alter the conditions' of Plaintiff's job"); *Zarza v. Tallahassee Hous. Auth.*, 686 F. App'x 747, 751 (11th Cir. 2017) (holding that the plaintiff did not sufficiently allege hostile work environment when he alleged "unfair" and "unpleasant" treatment, including that he was denied an office space and a vehicle compared to other employees).

### C.      The Second Amended Complaint is an Impermissible Shotgun Pleading

Defendant argues that the SAC is an impermissible shotgun pleading (DE 80 at 10). Despite being cautioned by the Court, Defendant asserts that Plaintiff still refuses to comply with Federal Rule of Civil Procedure 8(a)(2) and the Court's Orders (*id*.).  Specifically, Defendant argues that Plaintiff does not separate each cause of action into different counts, even though she is seemingly seeking relief under three separate legal theories (*id*.).  Defendant argues that it is unclear which facts pertain to what claims and even what substantive counts Plaintiff intends to assert with their corresponding factual predicates (*id*.).  Plaintiff does not directly address this argument in her response.

"Before dismissing a complaint with prejudice on shotgun-pleading grounds, the district court must first explain how the pleading violates the shotgun-pleading rule and give the plaintiff at least one opportunity to re-plead the complaint."  *Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018).  "Shotgun pleadings are improper in that they fail 'to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *Id*. (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)).  "'If doing so would promote clarity,' Rule 10(b) also mandates that 'each claim founded on a separate transaction or occurrence . . . 'be stated in a separate count' . . . ." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)). "These rules were also written for the benefit of the court, which must be able to determine 'which facts support which claims,' 'whether the plaintiff has stated any claims upon which relief can be granted,' and whether evidence introduced at trial is relevant." *Barmapov*, 986 F.3d at 1324 (citation omitted).

Plaintiff filed her initial Complaint on October 1, 2024 (DE 1).  The May 30, 2025 R&R, which the Court adopted on June 2, 2025, pointed to specific deficiencies in the Complaint, including that it failed to separate the causes of actions and the factual allegations into numbered paragraphs, identify a basis for discrimination, and allege specific facts to establish each element of the cause of action (DE 62 at 6-7).  In addition, the Court's June 16, 2025 Order reiterated the deficiencies addressed in the R&R and provided Plaintiff with an opportunity to fix them (DE 62).  On June 30, 2025, Plaintiff filed an Amended Complaint (DE 72).  On July 2, 2025, the Court again pointed out specific deficiencies in the Amended Complaint, including that CAHS was still listed as a co-defendant, even though the Court explained CAHS lacks the capacity to be sued, that the causes of actions and factual allegations were not in separate numbered paragraphs, and that the Amended Complaint was silent as to the alleged racial or other discrimination, and the Court permitted Plaintiff leave to file another complaint that corrected these issues (DE 73).

Plaintiff had the benefit of three orders and three complaints to meet the required pleading standard.  Nevertheless, the SAC still does not separate out the causes of action and their respective facts, as first discussed in the May 30, 2025 R&R (DE 62 at 6).  This is not simply an issue of form, as neither Defendant nor the Court can determine "which facts support which claims[.]" *Barmapov*, 986 F.3d at 1324; *see also Weiland*, 792 F.3d at 1322-23 ("The third type of . . . shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." (citation omitted)).  While Plaintiff now uses numbered paragraphs, though she abandons her use of numbered paragraphs after paragraph fifteen, that alone does little to identify which facts support which claims, or even what the intended claims are.  Additionally, as first discussed in the May 30, 2025 R&R, Plaintiff still declines to identify a basis for discrimination and allege specific facts to establish each element of the intended cause of action.

It cannot be overlooked that Plaintiff has had multiple opportunities to amend the Complaint and to correct both procedural and substantive deficiencies. Although guided by the Court on multiple occasions, the SAC still fails to adequately address previously identified deficiencies. Considering the course of this litigation, there is no reason to believe a fourth complaint will fare any better. *See Nurse*, 618 F. App'x at 991 ("[Given] Mr. Nurse's failure to heed the magistrate judge's explicit guidance, we are hard-pressed to see how allowing Mr. Nurse to amend his complaint a third time would have yielded a more intelligible pleading."). Therefore, it is respectfully recommended that Defendant's Motion to Dismiss be **GRANTED** and that the claims in the SAC be **DISMISSED WITH PREJUDICE**.

## V.      CONCLUSION

Based on the foregoing, it is respectfully recommended that Defendant's Motion to Dismiss be **GRANTED** and that the SAC be **DISMISSED WITH PREJUDICE**. It is further respectfully recommended that all pending motions be **DENIED AS MOOT** and that this case be **CLOSED**.[9]

## VI.     OBJECTIONS

The Parties will have fourteen (14) days from this Report and Recommendations to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to file objections timely shall bar the Parties from a *de novo* determination by the District Judge of an issue covered in this Report and shall bar the parties from attacking on appeal

---

[9] Plaintiff filed her Motion for Summary Judgment several months before the close of discovery in this matter (DE 81). Because the undersigned is respectfully recommending that Defendant's Motion to Dismiss be granted, the merits of Plaintiff's Motion for Summary Judgment are not addressed. If, however, this action proceeds, the undersigned respectfully recommends that the Court deny Plaintiff's Motion for Summary Judgment without prejudice as premature and afford Plaintiff an opportunity to refile her Motion to incorporate the information obtained in discovery. *See Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1288 (S.D. Fla. 2005) ("Because Plaintiffs have not yet been able to obtain discovery from Defendant, the undersigned concludes that it would be premature to grant Defendant summary judgment at this time.").

unobjected-to factual and legal conclusions contained in this Report, except upon grounds of plain

error, if necessary, in the interest of justice.  *See* 28 U.S.C. § 636(b)(1)*; Thomas v. Arn*, 474 U.S.

140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on this 27th day of

January, 2026.

_____

ELLEN F. D'ANGELO
UNITED STATES MAGISTRATE JUDGE

cc:    *Pro Se* Plaintiff Falisha Bell
      All Counsel of Record